UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JUAN CUAHUTENCOS MEZA,

*Petitioner*,

– against –

LADEON FRANCIS, *Acting New York Field Director of Immigration Customs and Enforcement, in his official capacity*; TODD M. LYONS, *Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity*; MARKWAYNE MULLIN, *Secretary, U.S. Department of Homeland Security, in his official capacity*,

*Respondents*.

**MEMORANDUM & ORDER**
26-cv-02722 (NCM)

**NATASHA C. MERLE**, United States District Judge:

On April 28, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested and detained petitioner Juan Cuahutencos Meza near 55 Highlawn Avenue in Brooklyn, New York. Decl. of Michael Toussaint ("Toussaint Decl.") ¶ 12, ECF No. 6-1. On May 8, 2026, petitioner's son, proceeding as next of friend, sought a writ of habeas corpus from this Court under 28 U.S.C. § 2241. Pet. ¶ 2, ECF No. 1. On May 21, 2026, the Court held oral argument and granted the petition. This opinion sets forth the Court's reasoning.

BACKGROUND

Petitioner is a national and citizen of Mexico. Toussaint Decl. ¶ 1. On May 11, 2001, petitioner was encountered near Nogales, Arizona by U.S. Customs and Border Patrol ("CBP"). Toussaint Decl. ¶ 3. Petitioner returned to Mexico that same day. Toussaint Decl. ¶ 3. Thereafter, petitioner entered and departed the United States on several occasions.

1

Toussaint Decl. ¶¶ 4, 6–7, 10–11. Each time petitioner entered, he did so without authorization. Toussaint Decl. ¶¶ 7, 11.

On April 28, 2026, ICE's Fugitive Operations Team encountered petitioner while conducting a targeted enforcement action. Toussaint Decl. ¶ 12. During the targeted enforcement action ICE officers believed, mistakenly, that petitioner was the primary target based on his "matching . . . physical description." Toussaint ¶ 12. Accordingly, the officers approached petitioner, identified themselves, and conducted a field interview. *See* Toussaint Decl. ¶ 12. Petitioner voluntarily told the officers that he was a national and citizen of Mexico but refused to answer certain of the officers' questions, including whether he had documents permitting him to lawfully remain in the United States. Toussaint Decl. ¶ 12. At that point, the officers conducted a "system query check" that revealed petitioner had departed the United States twice. Toussaint Decl. ¶ 12. The system did not indicate, however, that petitioner had ever legally entered the United States. Toussaint Decl. ¶ 12. The officers concluded that petitioner did not have lawful status and was thus illegally present in the United States. Toussaint Decl. ¶ 12.

At that point, the officers executed a Form I-200, Warrant for Arrest of Alien ("Form I-200"), arrested petitioner, and transported him to the ICE office at 26 Federal Plaza for processing. Toussaint Decl. ¶ 13. At 26 Federal Plaza, Officer Michael Toussaint conducted an individualized custody determination, including an interview. Toussaint Decl. ¶ 15. During the interview, which was conducted in English, Officer Toussaint gave petitioner "an opportunity to demonstrate that he was not a danger." Toussaint Decl. ¶¶ 15, 17.[1] In response to some of Officer Toussaint's questions, however, petitioner

---

[1]     Officer Toussaint conducted this interview in English because "[p]etitioner claimed that he understood and spoke English." Toussaint Decl. ¶ 15.

"admitted that he 'drove drunk.'" Toussaint Decl. ¶ 17. This information, "in addition to the criminal rap sheet that [Officer Toussaint] reviewed," led Officer Toussaint to conclude that petitioner "would be a danger to property or persons if he was released." Toussaint Decl. ¶ 17. Accordingly, Officer Toussaint made a custody determination that, pursuant to Section 236 of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1226), petitioner would be "[d]etained by the Department of Homeland Security" pending a final administrative determination in petitioner's immigration case. *See* I-286 Notice of Custody Determination Form ("I-286 Form"), ECF No. 6-1 at 30.

At an unstated time on April 28, 2026, ICE "served [petitioner] with a Form I-862 Notice to Appear ('NTA')" charging him with being "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General," and directing him to appear before an Immigration Judge. Toussaint Decl. ¶ 18; *see* NTA, ECF No. 6-1 at 32.

On April 29, 2026, Petitioner was transferred to the Delaney Hall Detention Facility in Newark, New Jersey, and on May 8, 2026, Petitioner was transferred to the Metropolitan Detention Center ("MDC") in Brooklyn, New York. Toussaint Decl. ¶¶ 21, 23.

That same day, petitioner's son, proceeding as next of friend, sought a writ of habeas corpus from this Court under 28 U.S.C. § 2241. Pet. ¶ 2. On May 12, 2026, a superseding NTA was served on petitioner after ICE realized that "the initial NTA did not contain his signature." Toussaint Decl. ¶ 24. ICE represents that it continued to hold petitioner in detention under 8 U.S.C. § 1226(a). Toussaint Decl. ¶ 26.

On May 21, 2026, the Court held oral argument and granted the petition. *See* Minute Entry dated May 21, 2026.

**DISCUSSION**

Section 1226(a) states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. . . . [P]ending such decision, the Attorney General . . . may continue to detain the arrested alien [or] may release the alien on . . . bond of at least $1,500 . . . [or] conditional parole." 8 U.S.C. § 1226(a). The Department of Homeland Security has issued regulations implementing this statutory provision. *See* 8 C.F.R. § 1236.1.

One of these regulations, 8 C.F.R. § 1236.1(b)(1), limits the time in which a Form I-200 may be executed: "[a]t the time of issuance of the [NTA], or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest." 8 C.F.R. § 1236.1 (b)(1). "The NTA begins the removal process, and at that time or after its issuance, the [g]overnment can then effectuate [an individual's] arrest, and, if necessary, detention, until removal proceedings are completed." *Gopie v. Lyons*, No. 25-cv-05229, 2025 WL 3167130, at *1 (E.D.N.Y. Nov. 13, 2025) (citing *Niz-Chavez v. Garland*, 593 U.S. 155, 157–58 (2021)).[2] In other words, "an I-200 cannot be used to effectuate an arrest *before* an NTA has been issued." *Yeleshev v. Larocco,* No. 26-cv-02294, 2026 WL 1353806, at *2 (E.D.N.Y. May 14, 2026) (collecting cases).

At oral argument, the government did not dispute that the Form I-200 was issued before any NTA was issued. Hr'g Tr., ECF No. 12 at 12:13–19 (The Court: "Do you have any information on when the . . . [NTA] was issued and filed? I have the date, but not the

---

[2] Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

time." The government: "I do not have the time stamp. I can only represent that it was issued *after* the I-200 was issued.") (emphasis added). Rather, the government represented that "the position . . . [taken] by ICE is that the NTA should be issued during the time . . . of the entire transaction[] that . . . concerns the arrest and the custody determination." Hr'g Tr. 12:22–25. But even accepting that "the time frame between the issuance of the arrest warrant and the issuance of the NTA . . . was relatively short," *Yeleshev*, 2026 WL 1353806, at *2, "[t]here is no leeway[;] [i]f ICE wants to use a warrant, it must have a valid NTA in place," *Parada Cruz v. Mullin*, No. 26-cv-01110, 2026 WL 1027441, at *2 (E.D.N.Y. Apr. 16, 2026). Here, ICE did not have a valid NTA in place at the time the officers executed the Form I-200. Accordingly, "when ICE arrested [petitioner] they had no authority to do so," *Gopie*, 2025 WL 3167130, at *1, and the law "does not permit what occurred," *Yeleshev*, 2026 WL 1353806, at *2; *see also Garcia Lanza v. Noem*, 822 F. Supp. 3d 326, 333 (E.D.N.Y. 2026) ("[T]he authority to issue administrative arrest warrants emanates from a pending removal proceeding – which is initiated by the issuance of an NTA . . . .")

Prior to petitioner's release, respondents argued that the Court could not grant petitioner relief because he "received an initial custody determination" and was "pursuing his administrative remedies (*i.e.*, a bond hearing before an IJ)." Mem. in Opp'n ("Opp'n") 4, ECF No. 6. But just as "a bond hearing before an immigration judge . . . assumes that a valid custody determination was made in the first instance," *Gopie*, 2025 WL 3167130, at *3, it also assumes a valid arrest was made in the first instance. Indeed, this is not a case where the Court need evaluate whether "ICE followed the lawful procedures to arrive at a decision regarding dangerousness," *Terrero v. Tsoukaris*, No. 26-cv-00869, 2026 WL 607917, at *3 (E.D.N.Y. Mar. 4, 2026), because as discussed, petitioner's arrest was

procedually defective. *See supra.* Exhausting administrative remedies does nothing to cure a procedurally defective arrest. Accordingly, "it is not necessary that petitioner seek 'a re-determination of custody' by an immigration judge prior to seeking habeas relief from this Court." *Terrero*, 2026 WL 607917, at *3*; see Gopie*, 2025 WL 3167130, at *3; *Kelly v. Almodovar*, No. 25-cv-06448, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025).

To remedy the unlawful circumstances of petitioner's detention, petitioner is entitled to immediate release. "[A]n individual detained pursuant to Section 1226(a) who identifies some defect in the process governing her detention can raise that defect in a habeas action seeking release." *Gopie*, 2025 WL 3167130, at *2 (quoting *Salgado v. Francis*, No. 25-cv-06524, 2025 WL 2806757, at *8 (S.D.N.Y. Oct. 1, 2025)). A writ of habeas corpus "is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008). Accordingly, the Court deems petitioner's immediate release to be the appropriate remedy. *See Gopie*, 2025 WL 3167130, at *4; *Kelly*, 2025 WL 2381591, at *4.

## CONCLUSION

For the foregoing reasons, the Court **GRANTED** petitioner's writ of habeas corpus under 28 U.S.C. § 2241.

The Court ORDERED petitioner's immediate release from custody on May 21, 2026. *See* Minute Entry dated May 21, 2026. The Court further ORDERED that the government "shall not re-detain petitioner nor impose any conditions of release, for example, any form of supervision that would constitute a departure from the status quo prior to petitioner's arrest." *See* Minute Entry dated May 21, 2026. On May 22, 2026, respondents filed a letter on the docket certifying that petitioner had been released from detention. *See* Gov't Ltr., ECF No. 11.

Should petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within thirty days of this Order.

The Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the case.

**SO ORDERED.**

*/s/ Natasha C. Merle*
NATASHA C. MERLE
United States District Judge


Dated:        June 16, 2026
              Brooklyn, New York